UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIMBERLY SIAS,<br><br>       Plaintiff,<br><br>vs.<br><br>LAW OFFICES OF ANDREU, PALMA, &<br>ANDREU, PL,<br><br>       Defendant. | Civil Action No.: 1:10-cv-03773 (RMB)<br>(AMD)<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
ANDREU, PALMA & ANDREU, PL S/H/A LAW OFFICES OF
ANDREU, PALMA, & ANDREU, PL'S MOTION TO DISMISS THE COMPLAINT**

                HILL WALLACK, LLP
                777 Township Line Road, Ste. 250
                Yardley, PA 19067
                215-579-7700
                *Counsel for Defendant Andreu, Palma, &*
                *Andreu, PL s/h/a Law Offices of Andreu,*
                *Palma, & Andreu PL*

## TABLE OF AUTHORITIES

**CASES**

Atkinson & Mullen Travel, Inc. v. New York Apple Tours, Inc., No. 97-4460, 1998 U.S. Dist. LEXIS 20393 at * 5 (D.N.J. Sept. 17, 1998) .................................................. 11

AT&T v. MCI Comms. Corp., 736 F. Supp. 1294 (D.N.J. 1990) ............................................................ 12

Bane v. Netlink, Inc., 925 F.2d 637 (3d Cir. 1991) .................................................. 6

Barrett v. The Catacombs Press, 44 F.Supp.2d 717 (E.D. Pa. 1999) .................................................. 1, 2

Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141 (3d Cir. 1992) .................................................. 12

Catalano v. Lease & Rental Management Corp., 252 N.J. Super. 545 (Law Div. 1991) .................................................. 12

Clark Capital Mgmt. Group, Inc. v. Navigator Invest., LLC, Civ. No. 06-2334, 2006 U.S. Dist. LEXIS 66989 at *5 (E.D. Pa. Sept. 19, 2006) .................................................. 2

Cutler v. Raymark Indus., Inc., 707 F. Supp. 168 (D.N.J. 1989) .................................................. 8

Davis v. PNGI Charles Town Gaming, LLC, Civ. No. 07-2352, 2007 U.S. Dist. LEXIS 94381 at *5 (E.D. Pa. Dec. 26, 2007) .................................................. 2

Gehling v. St. George's School of Med. Ltd., 773 F.2d 539 (3d Cir. 1985) .................................................. 4

GMAC Real Estate, LLC v. Gate City Real Estate Co., No. 05-2253, 2005 U.S. Dist. LEXIS 24531 at *3 (D.N.J. Oct. 18, 2005) .................................................. 5

Kubin v. Orange Lake Country Club, Inc., No. 10-1643, 2010 U.S. Dist. LEXIS 107860 at *6 (D.N.J. Oct. 8, 2010) .................................................. 11

Lebel v. Everglades Marina, Inc., 115 N.J. 317 (1989) .................................................. 5

Leja v. Schmidt Mfg., Inc., No. 01-5042, 2005 U.S. Dist. LEXIS 18144 at *9 (D.N.J. Aug. 15, 2005) .................................................. 2

Litton Indus. Sys., Inc. v. Kennedy Van Saun Corp., 117 N.J. Super. 52 (Law Div. 1971) .................................................. 7, 8

Machulsky v. Hall, 210 F. Supp.2d 531 (D.N.J. 2002) .................................................. 1

Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc., 983 F.2d 551 (3d Cir. 1993) .................................................. 2

Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165 (1939) .................................................. 5

Pennsylvania Fire Ins. Co. v. Gold Issue Mining & Milling Co., 243 U.S. 93 (1917) .................................................. 4, 5

Pfundstein v. Omnicom Group Inc., 285 N.J. Super. 245 (App. Div. 1995) .......................... 12

Shapiro v. Sun Life Assurance Co. of Canada, 117 F.R.D. 550 (D.N.J. 1987) ........................ 2

Smith v. S&S Dundalk Eng'g Works, Ltd., 139 F.Supp.2d 610 (D.N.J. 2001) ..................... 11

Stranahan Gear Co. v. NL Indus., Inc., 800 F.2d 53 (3d Cir.1986) ........................................ 12

Sunbelt Corp. v. Noble, Denton & Assocs., Inc., 5 F.3d 28 (3d Cir. 1993) .............................. 2

Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446 (3d Cir. 2003) ......................................... 2

Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co., 75 F.3d 147 (3d Cir. 1996) ........... 5

Walburn v. Rovema Packaging Mach., L.P., No. 07-3692, 2008 U.S. Dist. LEXIS 25369 at *17
(D.N.J. March 28, 2008) ......................................................................................................... 2

## STATUTES

N.J. Ct. R. 4:4-4(b)(1) ........................................................................................................... 12

N.J. Stat. § 45:18-1 (2010) ....................................................................................................... 2

N.J. Stat. § 45:18-2 (2010) ) ..................................................................................................... 2

N.J.S.A § 14A:4-1 .......................................................................................... 6, 7, 8, 9, 10, 11, 12

N.J.S.A. § 14A-4-2 ............................................................................................................... 8, 9

N.J.S.A § 14A:13-4 ............................................................................................................. 9, 10

### REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ANDREU, PALMA & ANDREU, PL S/H/A LAW OFFICES OF ANDREU, PALMA, & ANDREU, PL'S MOTION TO DISMISS THE COMPLAINT

Plaintiff bases her entire opposition to the Andreu Firm's dismissal motion on the Andreu Firm's 2009 registration in New Jersey as a debt collection firm, a registration that, as a public record, was never hidden, and, indeed, adds nothing to the undisputed fact that the Andreu Firm conducts no business in New Jersey generally, or specifically with regard to its attempt to collect a debt against the Plaintiff, as alleged in the Complaint.

There is no dispute that the Andreu Firm is a Florida debt collection firm. (See ¶¶ 2, 4-6 of the Andreu Affdvt.; Complaint ¶ 8, Shavel Cert. Ex. A; January 3, 2010 Reply Affidavit of Juan Andreu ("Andreu Reply Affdvt.") at ¶ 7). In 2009, the Andreu Firm briefly engaged in unpaid medical bill collections, which required it to register in those states in which lawyers are not exempt from making collection calls, such as New Jersey. (See Andreu Reply Affdvt. ¶¶ 3-7). State registration and licensing was handled for the Andreu Firm by a third-party provider, Cornerstone Records Management ("Cornerstone"), a company which specializes in securing authorizations and registering collection firms in the states requiring debt collection licensing. Id. at ¶¶ 3-5.

The Andreu Firm briefly and unsuccessfully engaged in unpaid medical bill collections, and accepted a client which purchased outstanding medical bills. Id. at ¶¶ 3-5, 7. The only 2009 activity in this effort was the Andreu Firm making telephone calls to collect on medical claims; the Andreu Firm never entered New Jersey or any other state as part of its collection efforts. Id. at ¶ 3. Since it is well established in this Court that "telephone communications or mail sent by a defendant [do] not trigger personal jurisdiction if they 'do not show purposeful availment,'" Machulsky v. Hall, 210 F.Supp.2d 531, 539 (D.N.J. 2002) (quoting Barrett v. The Catacombs

Press, 44 F.Supp.2d 717, 729 (E.D. Pa. 1999) and Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc., 983 F.2d 551, 556 (3d Cir. 1993)), any evidence of such communications will not establish general jurisdiction. Leja v. Schmidt Mfg., Inc., No. 01-5042, 2005 U.S. Dist. LEXIS 18144 at *9 (D.N.J. August 15, 2005).

Indeed, as was established in the Andreu Firm's moving papers, telephone calls or even mail directed to one entity in the forum state is not sufficient to establish general jurisdiction. See also, Sunbelt Corp. v. Noble, Denton & Assocs., Inc., 5 F.3d 28, 33 (3d Cir. 1993) ("The telephone calls allegedly made by [the non-resident party] are not the basis of the cause of action."); Walburn v. Rovema Packaging Mach., L.P., No. 07-3692, 2008 U.S. Dist. LEXIS 25369 at *17 (D.N.J. March 28, 2008) (e-mail, faxes, phone calls to New Jersey insufficient to confer jurisdiction); Davis v. PNGI Charles Town Gaming, LLC, Civ. No. 07-2352, 2007 U.S. Dist. LEXIS 94381 at *5 (E.D. Pa. Dec. 26, 2007) (holding that direct mail and telephone solicitation insufficient to confer general personal jurisdiction); Barrett v. The Catacombs Press, 44 F. Supp. 2d 717 (E.D. Pa. 1999); Clark Capital Mgmt. Group, Inc. v. Navigator Invest., LLC, Civ. No. 06-2334, 2006 U.S. Dist. LEXIS 66989 at *5 (E.D. Pa. Sept. 19, 2006) ("telephone communication or mail sent by a defendant [do] not trigger personal jurisdiction if they do not show purposeful availment" (citing Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 455 (3d Cir. 2003)); Shapiro v. Sun Life Assurance Co. of Canada, 117 F.R.D. 550, 555 (D.N.J. 1987) (letter and telephone calls to forum insufficient to confer jurisdiction).

The Andreu Firm abandoned its unsuccessful medical claims collection practice in 2009, and was not even aware that Cornerstone licensed the Andreu Firm in accordance with N.J. Stat. § 45:18-1 (2010) and N.J. Stat. § 45:18-2 (2010), which require collection firms to register and post a $5,000 bond to engage in New Jersey collections. Id. Cornerstone undertook such

registration on behalf of the Andreu Firm when it was contracted to secure unpaid medical bill authorizations for the Andreu Firm's fledgling practice. (See Andreu Reply Affdvt. ¶¶ 5, 8). Such licensing was merely to comply with New Jersey law, rather than as part of any continuing New Jersey activities by the Andreu Firm. Id.

Plaintiff now claims that the Andreu Firm's New Jersey registration and posting of a statutory debt collection bond automatically confers jurisdiction in this matter. But there is no allegation, no affidavit, and no claim, nor could there be, that the Andreu Firm actually engaged in any systematic or recurring New Jersey business, let alone contacts concerning the actual Florida debt collection against the Plaintiff. Simply, Plaintiff has failed to refute that the Andreu Firm has no contacts with New Jersey with regard to the Florida collection matter alleged in the Complaint or with New Jersey generally.

The Andreu Firm has made no business telephone calls as part of any medical bill collection practice in more than one year, if any were ever made to New Jersey. Id. at ¶ 4. The Andreu Firm's only New Jersey activity was to engage Cornerstone, a nationwide licensing company, to obtain the necessary authorizations to start a medical claim collection practice. Id. at ¶ 5. Cornerstone assisted the Andreu Firm in registering or obtaining a license in states where attorneys are not exempt from such requirements, such as New Jersey. Id. Such registration and the posting of a bond are not the equivalent of engaging in continuous, repeated business in New Jersey either generally or with regard to the collection allegations in the Complaint. To the contrary, the most alleged by Plaintiff in her opposition papers is that the Andreu Firm became licensed to engage in medical bill collections – not that the Andreu Firm actually engaged in any such New Jersey activities.

Plaintiff has failed to introduce an affidavit or evidence contesting that the Andreu Firm

has never had offices, customers, or clients located in New Jersey. (See Andreu Affdvt. ¶¶ 2, 4-6, 8, 15-22; Andreu Reply Affdvt. ¶¶ 11-12). Even though the Andreu Firm briefly looked to open an unpaid medical bills collection practice, the Andreu Firm's debt collection business is focused exclusively in Florida; it has no business, accounts, or clients in New Jersey with regard to the matters addressed in the Complaint or with regard to any other matters. (See Andreu Affdvt. ¶¶ 2, 4-6, 16-20, 22). That fact has not been contested by Plaintiff, and even if Sias mounted such a challenge, the Third Circuit has held that the mere fact that an out-of-forum entity derives substantial revenue or other resources from a particular forum is not enough to confer general jurisdiction. See Gehling v. St. George's School of Med. Ltd., 773 F.2d 539, 543-44 (3d Cir. 1985).

Plaintiff tries to divert the Court's attention by focusing on the Andreu Firm's alleged FDCPA violation in Florida, claiming that its impact travelled to Sias in New Jersey.[1] Whether the Andreu Firm violated the FDCPA in pursuit of collecting Plaintiff's debt while she resided in Florida is irrelevant to whether there is jurisdiction over the Andreu Firm. Indeed, Plaintiff has not submitted an affidavit claiming any contacts by the Andreu Firm in New Jersey or that she was harmed by the Andreu Firm's Florida collection efforts. That alone is sufficient to avoid the exercise of specific jurisdiction in this matter.

Instead, Plaintiff seizes upon the Andreu Firm's New Jersey corporate registration under general jurisdiction, arguing that Pennsylvania Fire Ins. Co. v. Gold Issue Mining & Milling Co., 243 U.S. 93 (1917), which concerned a state's requirement requiring foreign insurers to appoint

---

[1] Plaintiff seemingly tries to bootstrap specific jurisdiction (out-of-state tort affecting New Jersey resident; see Plaintiff's December 20, 2010 Brief ("Plaintiff's Brief"), pp. 15-16)) by suggesting the Andreu Firm's Florida FDCPA collection efforts may have harmed Sias in New Jersey. Given that Sias has not submitted an affidavit alleging such harm, this argument, to the extent even applicable (no New Jersey authority is cited), should be rejected.

the insurance commissioner as an agent for service, compels the Court's exercise of jurisdiction in this action. (See Plaintiff's Brief, p. 8). Pennsylvania Fire does not require out-of-state companies to consent to personal jurisdiction merely because the company registered to conduct business in the state. Such a rule is left to state legislators, and in the case of Pennsylvania Fire, Justice Holmes' decision omitted the extent to which the insurer conducted business in Missouri because the matter sub judice did not concern such Missouri activities.

The issue here is not whether the Andreu Firm was served through its statutory agent, but whether there are sufficient general or specific jurisdiction contacts such that the Andreu Firm consented or could reasonably believe it would be sued in New Jersey for its Florida collection efforts against Plaintiff. Again, there are no Complaint allegations that any such collection efforts were made by the Andreu Firm in New Jersey; even if there were, the Third Circuit in Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co., 75 F.3d 147 (3d Cir. 1996) held that a nonresident defendant did not possess minimum contacts based solely on the mailing to the forum state of one of two signed contracts at issue in the litigation, telephone calls placed to the forum state in the course of negotiating the second contract, and other related correspondence mailed to the forum. Id. at 149, 152. See Lebel v. Everglades Marina, Inc., 115 N.J. 317 (1989) (transmittal of messages by mail or telephone not a critical factor in minimum contacts analysis unless their nature and content relates to activity in the forum state); GMAC Real Estate, LLC v. Gate City Real Estate Co., No. 05-2253, 2005 U.S. Dist. LEXIS 24531 at *3 (D.N.J. Oct. 18, 2005) (other factors, such as visits to forum, in addition to mail and telephone communications sent by a defendant to forum are typically necessary to support jurisdiction).

Plaintiff also cites Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165 (1939), a decision which addresses venue, not jurisdiction, and holds that for venue purposes, a

corporation can be a citizen of more than one state, not just the state in which it is incorporated. The Andreu Firm, of course, does not dispute that for purposes of venue, a corporation can be a resident of more than one forum.

The final case cited by Plaintiff on this topic, Bane v. Netlink, Inc., 925 F.2d 637 (3d Cir. 1991), concerns a Pennsylvania statute which provides, in relevant part:

> *(a) General rule. -- The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person . . .*
>
> . . .
> *(2) Corporations. --*
> *(i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.*
> *(ii) Consent, to the extent authorized by the consent.*
> *(iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.*

Bane concluded in an age discrimination context that whether an authorization to conduct business in Pennsylvania compelled jurisdiction was settled by the express language of the statute: *"[w]e need not decide whether authorization to do business in Pennsylvania is a "continuous and systematic" contact with the Commonwealth for purposes of the dichotomy between 'general' and 'specific' jurisdiction because such registration by a foreign corporation carries with it consent to be sued in Pennsylvania courts."* Id. at 640. The Third Circuit did not conclude that obtaining a New Jersey corporate registration compels the same result, probably because New Jersey does not have a statute similar to the Pennsylvania law confronting the Bane court.

Apparently emboldened by the Pennsylvania law, Plaintiff takes an untethered leap that N.J.S.A § 14A:4-1 requires the same result:

> *14A:4-1. Registered office and registered agent*
>
> *(1) <u>Every</u> <u>corporation</u> organized for any purpose under any general or special law of this State and every foreign corporation <u>authorized</u> <u>to</u> <u>transact</u> <u>business</u> in this State <u>shall</u> continuously <u>maintain</u> a registered office in this State, and <u>a</u> <u>registered</u> <u>agent</u> having a business office identical with such registered office.*
>
> *(2) The registered office may be, but need not be, the same as a place of business of the corporation which it serves.*
>
> *(3) The registered agent may be a natural person of the age of 18 years or more, or a domestic corporation or a foreign corporation authorized to transact business in this State, whether or not any such agent corporation is organized for a purpose or purposes for which a corporation may be organized under this act.*
>
> *(4) The designation of a principal or registered office in this State and of a registered agent in charge thereof by any corporation of this State or by any foreign corporation authorized to transact business in this State, as in force on the effective date of this act, shall continue with like effect as if made hereunder until changed pursuant to this act.*

L.1968, c.350; amended by L.1973, c. 366, s. 10, eff. May 1, 1974. (emphasis supplied)

The problem with Plaintiff's argument is that N.J.S.A. § 14A:4-1 does not confer the automatic, statutory personal jurisdiction of a registered company that exists under the Pennsylvania law. <u>Id.</u> To the contrary, N.J.S.A § 14A:4-1 merely requires the licensed foreign company to appoint an agent for service, which is not the same as appointing an agent to consent to personal jurisdiction.

Plaintiff's sole reference to any authority under N.J.S.A. § 14A:4-1 is <u>Litton Indus. Sys., Inc. v. Kennedy Van Saun Corp.</u>, 117 N.J. Super. 52 (Law Div. 1971). Unlike the Andreu Firm, the <u>Litton</u> defendant had the requisite minimum contacts to confer general jurisdiction because it admitted to substantial and continuous business in New Jersey. <u>Id</u>. at 59-60. In fact, the <u>Litton</u> Court seized upon this admission in finding the defendant subject to the Court's jurisdiction, specifically commenting that N.J.S.A. § 14A:4-1 did not confer jurisdiction, but was merely *"a helpful test in determining the reasonableness of subjecting the foreign corporation to*

*jurisdiction."* Id. at 60. Moreover, the Litton defendant partially performed the contract sued upon in New Jersey, thus conferring specific jurisdiction. Id. at 61-62, 64.

Far from elevating N.J.S.A. § 14A:4-1 to the same role as the Pennsylvania statute, Litton instead stands for the rule announced in every other New Jersey court considering general or specific jurisdiction over a foreign defendant, even one licensed to conduct business in the state: there must exist facts supporting the reasonable exercise of personal or general jurisdiction to withstand scrutiny under the Constitution's due process clause. In fact, the Litton Court opened its jurisdiction analysis by announcing that *"we are circumscribed only by the requirement that the corporation be afforded due process"* id. at 57, and then engaged in a thorough examination of the defendant's minimum contacts with New Jersey. Id. at 62-64.

When a foreign corporation designates an agent to accept service of process pursuant to N.J.S.A. § 14A:4-1, the New Jersey Secretary of State permits the company to limit its designation of a representative for service of process only to causes of action that would otherwise have the requisite minimum contacts with New Jersey. Cutler v. Raymark Indus., Inc., 707 F. Supp. 168, 171-173 (D.N.J. 1989). In this case, there is no evidence the Andreu Firm appointed an agent for service of process in compliance with the statute for anything more than the law's minimum basis. Indeed, Plaintiff has not submitted evidence contesting the statements of Mr. Andreu that his firm has no such contacts with New Jersey and did not appoint an agent as a basis to confer jurisdiction over the Andreu Firm.

Moreover, Plaintiff ignores that N.J.S.A. § 14A:4-1 is followed, and further defined by N.J.S.A. § 14A-4-2, which provides:

> *14A:4-2. Function of registered agent and office; service of process, notice or demand*
>
> *(1) Every registered agent shall be an agent of the corporation which has appointed him, upon whom process against the corporation may be served.*
>
> *(2) Whenever any law of this State requires or permits any notice or demand to be given to or made upon a domestic corporation or a foreign corporation authorized to transact business in this State, its officers or directors, such notice or demand may be sent by mail or otherwise, as the law may require or permit, to the registered office of the corporation in this State, and such notice so given or demand so made shall be sufficient notice or demand.*
>
> *(3) The provisions of this section shall not exclude any other method provided by law for service of process upon a corporation, domestic or foreign, or for service of a notice or demand upon such corporation, its officers or directors.*
>
> *(4) (Deleted by amendment, P.L. 1988, c. 94.)*

L.1968, c.350; amended 1969, c.102, ss.2,17; 1988, c.94, s.14. (emphasis supplied)

Thus, the statutory "agent" required by N.J.S.A. § 14A:4-1 is proscribed a statutory function in N.J.S.A. § 14A:4-2, which does not include rendering the foreign company susceptible to personal or general jurisdiction merely because the agent is required to be appointed by law and is amenable to service. Plaintiff ignores this provision of New Jersey's Corporations Law under Title 14A probably because it further refutes the argument that N.J.S.A. § 14A:4-1 confers jurisdiction in this matter.

Plaintiff also omits that under N.J.S.A § 14A:13-4, a foreign company's application for a certificate of authority does not require the company to appoint an agent for purposes of being amenable to a lawsuit in New Jersey. To the contrary, the statute merely requires that the agent be amenable to service of process, a completely different authority than subjecting the foreign entity to jurisdiction by such an appointment:

> *§ 14A:13-4. Application for certificate of authority*
>
> *(1) To procure a certificate of authority to transact business in this State, a foreign corporation shall file in the office of the Secretary of State an application executed on behalf of the corporation setting forth*
>
> *(a) the name of the corporation and the jurisdiction of its incorporation;*
>
> *(b) the date of incorporation and the period of duration of the corporation;*
>
> *(c) the address of the main business or headquarters office of the corporation;*
>
> *(d) the address of the registered office of the corporation in this State, and the name of its registered agent in this State at such address, together with a statement that the registered agent is an agent of the corporation upon whom process against the corporation may be served; and*
>
> *(e) the character of the business it is to transact in this State, together with a statement that it is authorized to transact such business in the jurisdiction of its incorporation.*
>
> *(2) Attached to the application shall be a certificate setting forth that such corporation is in good standing under the laws of the jurisdiction of its incorporation, executed by the official of such jurisdiction who has custody of the records pertaining to corporations and dated not earlier than 30 days prior to the filing of the application. If such certificate is in a foreign language, a translation thereof under oath of the translator shall be attached thereto.*
>
> *(3) Upon the filing of the application, the Secretary of State shall issue to the foreign corporation a certificate of authority to transact business in this State.*

L. 1968, c. 350.

While Plaintiff no doubt prefers to elevate the requirement of N.J.S.A. § 14A:4-1 to a foreign company confessing jurisdiction by the appointment of a registered agent, New Jersey's business laws provide to the contrary. There is no basis to extend the statute to the lengths proposed by Plaintiff in her examination of the Andreu Firm's missing contacts with New Jersey. Such a finding would subject to jurisdiction every corporation in the world which is licensed in New Jersey, eviscerating decades of jurisprudence addressing the nuances of general and specific jurisdiction when considered against New Jersey's long arm statute. The practical fallout from

such a rule would dismantle application of the Constitution's due process clause and discourage companies from registering to conduct business in New Jersey.

District Court Judge Freda Wolfson reached a similar conclusion in an October 2010 decision, Kubin v. Orange Lake Country Club, Inc., No. 10-1643, 2010 U.S. Dist. LEXIS 107860 at *6 (D.N.J. October 8, 2010), holding that *"'a certificate to do business in New Jersey [is] insufficient to establish general jurisdiction, absent evidence that [defendant] was actually doing business in New Jersey.'"* (quoting Smith v. S&S Dundalk Eng'g Works, Ltd., 139 F.Supp.2d 610, 620, n. 6 (D.N.J. 2001) (emphasis in original) (internal citations omitted); see Atkinson & Mullen Travel, Inc. v. New York Apple Tours, Inc., No. 97-4460, 1998 U.S. Dist. LEXIS 20393 at * 5 (D.N.J. Sept. 17, 1998) (having a license to conduct business in New Jersey is not "in and of itself sufficient to establish continuous and substantial contacts").

Plaintiff's interpretation of N.J.S.A. § 14A:4-1 is largely academic anyhow, because there are no allegations in the Complaint directly linking the Andreu Firm to New Jersey, other than Sias broadly alleging that the Andreu Firm *"conducts business in New Jersey."* (See Complaint ¶ 3, Shavel Cert. Ex. A). This single general jurisdiction allegation does not establish any minimum contacts by the Andreu Firm with New Jersey, and certainly does not invoke the statutory justification now advanced by Plaintiff.

The Complaint makes no such argument because there cannot be any allegation that the Andreu Firm purposefully contacted Sias in New Jersey for any purpose, let alone in violation of the FDCPA. The Complaint, and now Plaintiff's brief, is silent with regard to any direct contacts between the Andreu Firm and Plaintiff in New Jersey. That is likely because it is not disputed by Plaintiff that the Andreu Firm does not have regular contacts or dealings with New Jersey customers or clients, and has no professional relationship with New Jersey. Indeed, by the

Complaint's own admission, all of the alleged FDCPA-violative conduct occurred, if at all, in Florida. (See Complaint ¶¶ 17-37, Shavel Cert. Ex. A).

The Court should reject Plaintiffs interpretation of N.J.S.A. § 14A:4-1 because it is contrary to law and the exercise of jurisdiction under New Jersey's long-arm statute must be "consistent with due process of law." N.J. Ct. R. 4:4-4(b)(1). Pfundstein v. Omnicom Group Inc., 285 N.J. Super. 245, 250 (App. Div. 1995). Plaintiff's conclusion that the Andreu Firm's registration as a New Jersey company ignores the important due process analysis incumbent in such an examination, and disregards whether the Andreu Firm had constitutionally sufficient "minimum contacts" with New Jersey sufficient for it to have expected to be sued in New Jersey due to Plaintiff's New Jersey relocation during a Florida collection proceeding.

In sum, the Andreu Firm has raised the defense of lack of personal jurisdiction, shifting the burden to Plaintiff to prove by a preponderance of evidence facts sufficient to establish personal jurisdiction. Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). A plaintiff must establish the defendant's contacts with the jurisdiction through the use of "sworn affidavits, certifications, or testimony." Catalano v. Lease & Rental Management Corp., 252 N.J. Super. 545, 547-48 (Law Div. 1991) (citing Stranahan Gear Co. v. NL Indus., Inc., 800 F.2d 53 (3d Cir.1986); AT&T v. MCI Comms. Corp., 736 F. Supp. 1294 (D.N.J. 1990)). Plaintiff has failed to meet this burden.

## CONCLUSION

The Andreu Firm adopts by reference the legal authority and arguments in its moving papers, particularly those sections dealing with the lack of specific and general jurisdiction, and the alternative argument of transfer. Given that Plaintiff cannot adequately state a basis under New Jersey law for the Court to confer jurisdiction over the Andreu Firm, this Court should

dismiss the Complaint and each of the claims against the Andreu Firm with prejudice, and award attorneys' fees and costs. In the alternative, for the reasons stated in the Andreu Firm's December 9, 2010 moving papers, the action should be transferred to the Southern District of Florida.

Dated: January 4, 2011

                                HILL WALLACK, LLP

                         By:    /s Michael J. Shavel
                               Michael J. Shavel, Esq. (MS7377)
                               Hill Wallack, LLP
                               777 Township Line Road, Ste. 250
                               Yardley, PA 19067
                               215-579-7700
                               Counsel for Defendant Andreu, Palma & Andreu,
                               PL s/h/a Law Offices of Andreu, Palma, & Andreu
                               PL

Counsel:     Samuel D. Levy
              Wuersch & Gering LLP
              100 Wall Street, 21st Floor
              New York, New York 10005
              212-509-5050
              Counsel for Defendant Andreu, Palma & Andreu, PL s/h/a Law Offices of Andreu, Palma, & Andreu, PL